956 F.2d 263
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Theodore HENDERSON, II, a/k/a T.J., Defendant-Appellant.
 No. 90-5925.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 6, 1991.
Decided Feb. 28, 1992.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, District Judge. (CR-90-102-A)
 Argued: Warren Gary Kohlman, Kohlman & Rochon, Washington, D.C., for appellant; Liam O'Grady, Assistant United States Attorney, Alexandria, Va., for appellee.
 On Brief: Kenneth E. Melson, United States Attorney, Alexandria, Va., for appellee.
 E.D.Va.
 AFFIRMED.
 Before WIDENER and HAMILTON, Circuit Judges, and DENNIS W. SHEDD, United States District Judge for the District of South Carolina, sitting by designation.
 OPINION
 HAMILTON, Circuit Judge:
 
 
 1
 Appellant, Theodore Henderson, II, was charged in a 13 count indictment arising out of a drug conspiracy, a pattern of racketeering, and related violent crimes in furtherance of the conspiracy and the pattern of racketeering.[1] Among those related crimes, Henderson was charged, along with Bruce Murrell and Armistead Gravette, with conspiracy to commit murder, and along with Murrell, with attempt to commit murder. The sole issue raised on this appeal is whether the district court abused its discretion in allowing the trial to go forward without Henderson's choice of counsel. Finding no abuse of discretion, we affirm.
 
 
 2
 * In January 1989, Henderson was recruited to join a conspiracy directed by Bruce Murrell that was involved in the distribution of cocaine base ("crack"). As a member of this conspiracy, Henderson, along with Eric McCormick, distributed various amounts of cocaine base supplied by Murrell to a number of individuals. At times, the drugs were "fronted"[2] to these individuals.
 
 
 3
 Murrell fronted drugs to Eddie Jackson on March 14, 1989, for distribution in Alexandria, Virginia. Later that day, while a warrant was being executed at Jackson's place of residence, Jackson hurriedly destroyed the cocaine base that was supplied by Murrell and Henderson. Murrell and Henderson fronted additional amounts of cocaine base to Jackson, in expectation and on the condition that Jackson pay them back for the cocaine base that was destroyed. Thereafter, Henderson confronted Jackson in order to obtain satisfaction of the debt, but was unsuccessful.
 
 
 4
 Around March 20, 1989, Henderson, Murrell and Armistead Gravette, another co-conspirator, agreed to send a gunman to Jackson's home in order to force Jackson into paying. On March 22, in another effort to collect the debt, Henderson, Murrell and McCormick went to Jackson's residence. Again, they were unsuccessful. Thus, they turned to the gunman, Jamie Wise, who arrived at Jackson's residence later that day (March 22) with a sawed-off shotgun. Instead of threatening Jackson, Wise attempted to rob Jackson and precipitated a hostage situation. Wise allowed Jackson's younger brother to leave to fetch some "crack." Instead of obtaining the crack, Jackson's younger brother called the Alexandria Police. A negotiation and hostage team arrived at Jackson's residence. Eventually, Wise directed Jackson out of the residence, and followed him with the shotgun pointed at Jackson's head.
 
 
 5
 Officers Chelchowski and Hill tried to persuade Wise to put down his weapon. Wise agreed provided the officers put down their weapons first. Chelchowski and Hill complied. After they did so, a police sniper shot Wise. As Wise fell, he fired, hitting Officer Hill in the head and killing him. Wise fired another round that hit Chelchowski, wounding him.
 
 
 6
 On March 28, 1990, Henderson was indicted on 13 counts stemming from his participation in the conspiracy to distribute cocaine base and participation in a pattern of racketeering. As part of the indictment, Henderson was also charged with conspiracy to commit the murder of Kevin Strother,[3] and conspiracy to commit an assault with a dangerous weapon upon Jackson, and conspiracy to commit a crime of violence upon Jackson.
 
 
 7
 On March 29, 1990, a bench warrant was issued and Henderson was eventually apprehended, and arraigned in Alexandria on August 10, 1990, before Chief Judge Bryan. At that time, counsel was appointed, a motions' hearing date was set for August 31, 1990, and a trial was set for Tuesday, September 25, 1990.
 
 
 8
 Just before September 21, 1990, Henderson's family, who lived in New York City, retained counsel ("retained counsel" or "new counsel") to represent Henderson. On Friday, September 21, 1990, new counsel filed a motion to contingently notice appearance of counsel and motion to continue trial. New counsel requested a continuance so that he could begin another trial in the same courthouse on the same day as the start of Henderson's trial. In defendant's statement regarding new counsel, Henderson states:
 
 
 9
 I am being prosecuted by the government and do not want a government paid lawyer to represent me. In these circumstances, I have been unable to build a trusting relationship with my court-appointed attorney. Because of the serious nature of the case and because the government's most significant witnesses are supposed to know me, it is extremely important that I be able to share confidences with my attorney. I cannot have such a relationship with court-appointed counsel, I need an attorney I know I can trust. As it is now, my court-appointed lawyer and I do not talk to each other about the most important aspects of the case.
 
 
 10
 J.A. 402-03. This request for a continuance was denied by Judge Bryan.
 
 
 11
 On September 25, 1990 (the trial date), court-appointed counsel sought to withdraw from the case. Court-appointed counsel stated:
 
 
 12
 I have met with Mr. Henderson either four or five times in an effort to prepare for trial. On each occasion[,] Mr. Henderson has declined to--I don't say declined to cooperate, but he declined to speak with me about the particulars of the case because he indicated to me that his family intended to retain counsel for him shortly and that he simply did not trust counsel provided to him by the [g]overnment, especially in a case of this magnitude. And, therefore, he instructed me not to continue to try and talk to him. And I reluctantly honored that wish. J.A. 74-75. Court-appointed counsel added:
 
 
 13
 Mr. Henderson, however, persisted [after the district court denied the September 21 continuance motion] in his position that he didn't believe he could be capably represented by a court-appointed lawyer, and to this day has not provided me one whit of information that will assist me in defending him. I don't suggest that Mr. Henderson has a wish to go to prison for the rest of his life, but I simply believe that he is so distrustful of me as his court-appointed lawyer that he feels that he can't assist me. And, therefore, I don't feel that I could give him the defense to which he is entitled to this morning. J.A. 75. Judge Hilton, the trial judge, denied that request.
 
 
 14
 The trial commenced, and the district court granted an acquittal on Count 11 after the government rested. On September 26, 1990, the jury returned a verdict of guilty on the remaining counts except 9 and 13, as to which Henderson was acquitted.
 
 
 15
 On December 7, 1990, Judge Hilton, sentenced Henderson to an aggregate sentence of life plus ten years. Specifically, the district court sentenced Henderson to life in prison on each of Counts 1, 2, 5, 7, 8, 10 and 12 and to 10 years on Count 3. All of these sentences were to run concurrently. On Counts 4 and 6 (the weapons counts), the district court sentenced Henderson to five years each to run consecutively to the other counts.
 
 
 16
 Henderson noted a timely appeal.
 
 II
 
 17
 The Sixth Amendment to the Constitution provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." This right "not only [includes] an indigent's right to have the government appoint an attorney to represent him, but also the right of any accused ... to be represented by an attorney of his own choosing." United States v. Inman, 483 F.2d 738, 739-40 (4th Cir.1973), cert. denied, 416 U.S. 988 (1974). However, this right is subject to one very important qualification: that is the right of the trial court to control its own docket. As a practical matter, the right to counsel of choice cannot be employed to subvert the proper operation of the courts or the administration of justice. Thus, the instant case, requires the court to take another look at the balancing of the court's interest in moving forward in an orderly manner and a defendant's interest in proceeding forward with counsel of choice.
 
 
 18
 The standard of review of the district court's denial of defendant's motion for a continuance is an abuse of discretion standard. Morris v. Slappy, 461 U.S. 1, 11-12 (1983). To establish that a denial of his sixth amendment right to counsel of choice took place as a result of refusing defense counsel's motion for a continuance and proceeding to trial, Henderson has to establish that the district court abused its discretion in denying the motion and going forward to trial, and that the denial specifically prejudiced him. United States v. Lorick, 753 F.2d 1295, 1297 (4th Cir.), cert. denied, 471 U.S. 1107 (1985); Hutchins v. Garrison, 724 F.2d 1425, 1434 (4th Cir.1983).
 
 
 19
 In the context of this case, an "abuse of discretion" exists where the denial of the motion for continuance is "an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for a delay.' " Slappy, 461 U.S. at 11-12 (quoting Ungar v. Sarafite, 376 U.S. 575, 589 (1964)). "The Supreme Court has also indicated that the test for whether a trial judge has 'abused his discretion' in denying a continuance is not mechanical; it depends mainly on the reasons presented to the district judge at the time the request is denied." United States v. LaRouche, 896 F.2d 815, 823 (4th Cir.), cert. denied, 110 S.Ct. 2621 (1990) (quoting Ungar, 376 U.S. at 589).
 
 
 20
 We addressed this precise question in Inman. In Inman, the defendant was arrested for aiding and abetting the armed robbery of a federally insured bank on September 6, 1972, and indicted on October 10. Ten days later, counsel was appointed for Inman, and a trial date was set for December 18, 1972. 483 F.2d at 739. On December 11, 1972, Inman's mother retained private counsel to represent her son. On December 12, retained counsel communicated to the district court, while meeting with the district judge and an assistant United States attorney, that he needed a continuance. The district court denied the request; thus Inman knew almost a week in advance that he was going to proceed with court-appointed counsel. A formal motion for a continuance was made on the morning of the trial date. The reasons proffered by retained counsel were that he needed more time to prepare and he had another trial scheduled for the same day. The district court again denied the motion citing the fact that jurors and witnesses had already been summoned. The trial lasted one day and Inman was convicted and sentenced to 25 years. This court affirmed, noting:
 
 
 21
 Here, we find no abuse of discretion, even though we conclude that the outermost reach of discretion was exercised. Retained counsel's assigned reasons for a continuance were valid.... But retained counsel's appearance in the case occurred late, after the case had been set for approximately two months and when the trial was about to begin, although there is no basis on which even to suspect lateness was intentional on the part of counsel. The fact that jurors and witnesses had been summoned was another factor militating against the grant of a continuance.
 
 
 22
 Id. at 740. (footnote omitted) (emphasis added). We went on to state that:
 
 
 23
 Here, the record is devoid of any militating explanation of why retained counsel's appearance was late. There is no suggestion that defendant's family was unaware of his plight or that defendant's family lacked the financial resources to engage counsel for him earlier. Nor is there a claim of any dissatisfaction by defendant with the services of his appointed counsel.
 
 
 24
 Id. (footnote and citation omitted). Considering all the factors, the Inman court concluded that there was no abuse of discretion.
 
 
 25
 The government argues that this case is on all fours with Inman. In support, the government points to the similarities between this case and Inman. In addition, the government asserts that Henderson's emphasis on the 42 days it took him to retain counsel, as opposed to three months in Inman, is not persuasive because that calculation does not include the time that he was a fugitive from justice. Henderson was indicted on March 28, 1990 and first appeared before the district court for arraignment on August 10, 1990. Finally, the government notes that only one working day, Monday, September 24, 1990, separated the request for continuance from the beginning of trial.
 
 
 26
 Henderson argues that Inman is distinguishable because: (1) he expressed dissatisfaction with his court-appointed counsel--his inability to trust him because court-appointed counsel was paid by the government; and (2) his family had taken 42 days to secure counsel as opposed to three months in Inman. In addition, Henderson points to the fact that his request for a continuance was made four days prior to trial (on the Friday before trial on Tuesday), as opposed to the morning of trial in Inman, and that since his family was from New York City, it compounded the difficulty of obtaining counsel. Argues Henderson, "[i]f [Inman ] is the outer limit of discretion, this case is well beyond abuse of discretion." Appellant's Brief at 13.
 
 
 27
 The similarities between the case at bar and Inman are readily apparent. As in Inman, retained counsel in this case had a valid reason for obtaining a continuance--he had a trial on the same day in the same courthouse. In addition, in each of these cases jurors and witnesses had been summoned. On this point, the court in Inman noted, "The fact that jurors and witnesses had been summoned was another factor militating against the grant of a continuance." 483 F.2d at 740. (footnote omitted). In both cases, each defendant took an inordinate amount of time (Inman three months, Henderson 42 days) to retain counsel. Thus, Henderson's emphasis on the 42 days it took to retain counsel is not significant. This is true even though Henderson was a fugitive from justice, being indicted in late March and apprehended in early August. Finally, Henderson knew prior to trial that he was proceeding with court-appointed counsel, as did Inman. In Inman, the defendant knew for six days prior to trial that he was proceeding with court-appointed counsel, after the district court informally denied his retained counsel's motion for a continuance. Henderson knew from the date of his arraignment, August 10, 1990, that he would be proceeding to trial with court-appointed counsel. Thus, the fact that Henderson made his request for a continuance four days prior to trial is not persuasive.[4]
 
 
 28
 The remaining facts relied upon by Henderson compel us to find no abuse of discretion. Little need be said regarding the location of Henderson's family. It is a factor to be considered, and may under certain circumstances, lend itself, along with other factors, to a finding of an abuse of discretion. That is not the case here. Approximately, 240 miles separate Alexandria, Virginia and New York City. In light of this distance, today's forms of communication, and the dearth of evidence that Henderson's family experienced any difficulty in retaining counsel, it is not unreasonable to assume that Henderson's family could have retained competent counsel well before the trial date. Therefore, the fact Henderson's family resided in New York City is of little or no import.
 
 
 29
 Under the facts before us, Henderson's life sentence (despite being substantial) and his distrust for his court-appointed counsel, do not support, or tilt the scales in favor of, a finding of an abuse of discretion in refusing to continue the trial. Beginning with his arraignment on August 10, 1990, Henderson was aware of the potential life sentence through information supplied at arraignment. With this information in hand, Henderson voluntarily declined to assist his courtappointed counsel. This choice was his own, as was his choice not to trust his court-appointed attorney. Nothing prevented Henderson from cooperating with his court-appointed counsel. In United States v. Gaither, 527 F.2d 456 (4th Cir.1975), cert. denied, 425 U.S. 952 (1976), the defendant discharged retained counsel and first appointed counsel. The district court appointed new counsel one month before the trial date. One week prior to trial the defendant moved for a continuance. The district court denied the motion. Id. at 457. On appeal, we found no abuse of discretion where "The record [showed] that trial counsel conducted penetrating and lengthy crossexamination of government witnesses, and raised all pertinent defenses." Id. at 457-58. We added that the "defendant was in no position to complain of a situation for which he was 'intentionally and knowingly responsible.' " Id. at 458 (quoting United States v. Grow, 394 F.2d 182, 210 (4th Cir.), cert. denied, 393 U.S. 840 (1968)). Similarly, Henderson benefitted from extremely competent counsel and should not be rewarded or entitled to reap the benefits of an unfounded distrust of his court-appointed attorney. The mere fact that appointed counsel is paid by the government, standing alone, is insufficient reason to question court-appointed counsel's integrity. District judges are also paid by the government. In sum, we find that the facts of this case fall within the penumbra contemplated by this court's decision in Inman, and our finding of no abuse of discretion is consistent with the principles delineated in Slappy and Wheat v. United States, 108 S.Ct. 1692 (1988).
 
 
 30
 Turning to the issue of prejudice, although prejudice is presumed, United States v. Harvey, 814 F.2d 905, 926 (4th Cir.1987), we find that this presumption is rebutted by the facts of this case and the lack of evidence militating in favor of a finding of prejudice to Henderson. The fact that the continuance issue is the only issue on appeal suggests that there was in fact no prejudice. Although Henderson called no witnesses on his behalf, it is clear from the record that cross-examination was effective, resulting in acquittals on three of the possession counts.
 
 
 31
 In LaRouche, this court affirmed the district court's denial of a motion for continuance based upon inadequate preparation time. 896 F.2d at 825. Addressing the prejudice issue the court observed:
 
 
 32
 The defendants simply fail to point to specific errors made by their lawyers that resulted from the lack of adequate preparation time. While they allege that many areas of the defense could have improved, they do not specifically state how such improvement could have been accomplished.
 
 
 33
 Id. In the present case, Henderson fails to identify specific errors made by his court-appointed counsel or any prejudice as a result of his failure to fully cooperate with court-appointed counsel. In addition, he has failed to present evidence that the result would have been different with retained counsel. His conclusory allegation does not suffice. Henderson seeks to distinguish LaRouche on the fact that LaRouche involved a case where the defendants had counsel of choice. This point is not persuasive where, as here, the defendant cannot identify how the result would have been different even with counsel of choice.
 
 III
 
 34
 The district court's denial of Henderson's motion for continuance and decision to proceed to trial was not an abuse of discretion. Accordingly, the judgment of the district court is affirmed.
 
 
 35
 AFFIRMED.
 
 
 36
 WIDENER, Circuit Judge, joins.
 
 DENNIS W. SHEDD, District Judge, dissenting:
 
 37
 I respectfully dissent. Henderson claims that the district court abused its discretion and violated his sixth amendment right to counsel in denying his motion for a continuance. I would not reach the constitutional issue but, instead, would reverse because I believe the district court abused its discretion in denying the motion for a continuance.
 
 
 38
 I agree with the majority's statement of the standard to be applied in determining whether the district court abused its discretion in denying Henderson's motion for a continuance; however, my application of this standard leads to a different result than that reached by the majority. In this circuit, United States v. Inman, 483 F.2d 738 (4th Cir.1973), cert. denied, 416 U.S. 988 (1974), represents the "outermost reach of discretion" in denying a motion for continuance. 483 F.2d at 740. While this case is somewhat similar to Inman, there are several distinguishing factors not present in Inman which militate in favor of granting the motion for continuance.
 
 
 39
 For example, in Inman, this Court expressly noted that the motion for continuance was not made until the morning of trial, the jurors and witnesses had already been summoned,[1] there was no suggestion that the defendant's family lacked the financial resources to engage counsel for him earlier, and there was no dissatisfaction by the defendant with the services of his appointed counsel. This contrasts dramatically with the case before us where the motion for continuance was made four days before the case was scheduled to begin, there was an indication of financial difficulties hampering Henderson's retention of counsel of choice,[2] and Henderson clearly expressed his dissatisfaction with his appointed counsel.[3] If Inman sets the "outermost limit" on a district court's discretion in denying a motion for continuance, I believe the presence of any one of these additional factors pushes the case sub judice beyond the boundaries of Inman. The presence of all of these factors certainly makes the district court's denial of the motion an abuse of discretion.
 
 
 40
 Furthermore, I would note that there is no evidence in the record to indicate that Henderson moved to continue his trial for any bad faith or dilatory reasons. Henderson was incarcerated at the time that the request was made and, as matters eventually developed, his request would have delayed the trial, for which Henderson faced possible life imprisonment, for only a matter of a few days. While it is not clear if Henderson alerted the district court to the relatively brief delay he expected to result from his request, the information was readily available to the district court since Henderson's retained attorney was seeking the continuance in order to litigate another case in the same courthouse. Therefore, this case does not represent the type of case in which a continuance request is made to abuse the system.
 
 
 41
 For these reasons, I would find that the district court abused its discretion by denying the motion for continuance, and I would reverse and remand for a new trial.
 
 
 
 [1]
 Specifically, Henderson was charged with: conspiracy to distribute, and to possess with intent to distribute, cocaine base (Count 1); conspiracy to engage in a pattern of racketeering in support of a criminal enterprise (Count 7); engaging in a pattern of racketeering to support a criminal enterprise (Count 8); conspiracy to commit violent crimes for the purpose of maintaining and increasing position in an enterprise engaged in a racketeering activity (Count 2); attempt to commit murder and assault with a dangerous weapon for the purpose of maintaining and increasing position in an enterprise engaged in a racketeering activity (Count 3); assault with a dangerous weapon and threat to commit a crime of violence; use of a firearm in relation to a crime of violence (Counts 4 and 6); and multiple counts of possession of a controlled substance (Counts 9-13)
 
 
 [2]
 "Fronting" is the practice of supplying narcotics on credit
 
 
 [3]
 Kevin Strother worked for McCormick, and eventually owed McCormick money for drugs. On March 21, 1989, Henderson and Murrell confronted Strother for payment of the debt. Henderson and Strother engaged in a fist fight that was broken up. However, not to be outdone, Henderson returned to the scene with a gun, and fired four shots at Strother, hitting no one
 
 
 [4]
 In his brief, Henderson states that he needed a few extra days to allow retained counsel to begin another trial (which lasted less than one week) on the same day as the start of his trial. We note that there is nothing in the record to suggest that the district court could have accommodated Henderson's request for a continuance. Along a different vein, it is equally unclear whether Henderson could have retained other competent counsel to represent him at trial, or why Henderson's retained counsel did not assist him in obtaining competent counsel after Judge Bryan denied the motion for continuance on September 21, 1990. At oral argument, Henderson's counsel did indicate that he was one of a small number of attorneys in the Eastern District of Virginia who could try a case with little or no preparation time
 
 
 [1]
 Inman indicates "[t]he fact that jurors and witnesses had been summoned was another factor militating against the grant of a continuance." 483 F.2d at 740. Although Inman is not clear on this point, it appears from the context of that case that the word "summoned" was used to mean "present at the courthouse after having been summoned." Such a definition is supported by the Inman court's note that this fact militated against granting the continuance. Because the request for a continuance in this case was made prior to the date of trial, the jurors and witnesses were not present at the courthouse when the request was made
 
 
 [2]
 Apparently, the record of the September 21 hearing on the motion for a continuance was lost or is otherwise unavailable. Therefore, there is not a clear understanding of exactly what was before the district court on that date. However, Henderson at least suggests some financial difficulties in retaining counsel in his brief. (Brief of Appellant at 16)
 
 
 [3]
 I believe appointed counsel performed admirably under the circumstances, but, as this Court noted in Inman, the competence of the appointed counsel has no bearing on the issue of abuse of discretion. 483 F.2d at 740 n. 2. The issue of attorney competence and possible prejudice to a defendant would be relevant only if the sixth amendment issue were reached